**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RUTGER L. VAN ZANTEN,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **Civil Action No. 3:04-CV-0783-K** |
| **v.** | § | |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and an

Order of the Court in implementation thereof, subject cause has been referred to the United States

Magistrate Judge.  Before this Court are the following:

(1)    Plaintiff's *Motion for Summary Judgment* and *Brief in Support of Plaintiff's Motion for Summary Judgment*, filed March 4, 2005;

(2)    *Commissioner's Motion for Summary Judgment* and *Defendant's Response to Brief in Support of Plaintiff's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment,* filed June 2, 2005;

(3)    *Defendant's Response to Brief in Support of Plaintiff's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment*, filed August 18, 2003; and

(4)    Plaintiff's *Brief in Reply to Defendant's Response to Brief in Support of Plaintiff's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment*, filed July 5, 2005.

Having reviewed the evidence of the parties in connection with the pleadings, the undersigned

recommends that Plaintiff's motion for summary judgment be **DENIED**, and that Defendant's

1

motion for summary judgment be **GRANTED**.

# I.   BACKGROUND[1]

*A.*   *Procedural History*

Rutger Van Zanten ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner"), who denied his claim for disability benefits under Title II of the Social Security Act.  On June 2, 2000, Plaintiff filed an application for disability benefits under Titles II of the Social Security Act. (Tr. at 546-49.)  Plaintiff claimed he was disabled due to a back injury and depression.  (Tr. at 81).  Plaintiff's application was denied initially and upon reconsideration. (Tr. at 556-60; 550-53.)  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 42.)  A hearing, at which Plaintiff personally appeared and testified, was held on January 8, 2003.  (Tr. at 565-602.)  The ALJ issued his decision on January 30, 2003.  (Tr. at 24-34.)  The ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, because there was a significant number of jobs in the national economy that he could perform.  (Tr. at 34.)  The Appeals Council denied Plaintiff's request for review on February 12, 2004.  (Tr. at 4-7.)  Plaintiff then brought this timely appeal to the United States District Court pursuant to 42 U.S.C. § 405(g).

*B.*   *Factual History*

   1.   Age, Education, and Work Experience

Plaintiff was born on April 29, 1948.  (Tr. at 76.)  The amount of Plaintiff's schooling is uncertain.  In a previous application for benefits, Plaintiff stated that he completed lower school and two years of basic training school in the Netherlands.  (Pl.'s Br. Exh. B.)  In the application at issue

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

here, Plaintiff stated that he completed twelve years of schooling in the Netherlands.  (Tr. at 87.)

During the hearing, Plaintiff told the ALJ that he completed twelve years of schooling and two years

of college.  (Tr. at 568.)  His past relevant work experience includes employment as a truck driver.

(Tr. at 45; 68.)

      2.   <u>Medical Evidence</u>[2]

      a.   <u>Back problems</u>

On August 9, 1998, while traveling through California, Plaintiff was sleeping in the cabin

of a tractor trailer when the driver of the truck struck another tractor trailer.  (Tr. at 430.)  Plaintiff

was thrown from the sleeping cabin.  *Id.*  Plaintiff received treatment immediately after the accident

at Barstow Community Hospital, where he reported pain in the right foot and left lower leg.  (Tr. at

431.)  The X-rays of his hands, arms, chest, right foot, and cervix showed no fractures, but the

diagnostic radiology report noted foraminal stenosis on the left C2-3 and C3-4 and on the right at

C2-3, as well as accentuated lordosis.  (Tr. at 435.)  The physician who examined him prescribed

ibuprofen and refilled Plaintiff's prescriptions for Wellbutrin and Paxil.  (Tr. at 431.)

On August 17, 1998, Plaintiff saw Charles E. Willis, II, M.D. ("Dr. Willis") with complaints

of constant pain in his neck, low back, left shoulder, right foot, and left leg.  (Tr. at 440-42.)  Dr.

Willis assigned tentative diagnoses of acute cervical and lumbosacral strain, in addition to left

shoulder and right ankle strain.  (Tr. at 441.)

On September 3, 1998, Plaintiff underwent magnetic resonance imaging ("MRI") of his

lumbar spine.  (Tr. at 271-72.)  The impressions of Marcie Lichtiger Coben, M.D. ("Dr. Coben")

---

[2]The medical record in this case contains evidence from prior to Plaintiff's original alleged onset date of disability through the relevant period for this determination.  For the sake of brevity, the Court will reference only those portions of the evidence relevant to the points of error raised by Plaintiff.

included loss of disc signal/hydration at L5-S1, probable posterior annular tear at L5-S1, and disc protrusion at L5-S1 and L4-L5.

Phillip Earle Williams, Jr. M.D. ("Dr. Williams") conducted a neurological consultation with Plaintiff on December 2, 1998, at the request of his chiropractor, Marcia Miller ("Dr. Miller"). (Tr. at 304.) Dr. Williams stated that "[i]n view of the fact that he has not responded to good, conservative treatment at this point, and with the abnormal findings on the exam as well as the MRI, I think we should do a lumber myelogram and post-myelogram CAT scan." *Id.* Dr. Williams then stated, "[o]nce we have this information, then we will make a determination as to whether surgery is indicated or not." *Id.* In the meantime, Plaintiff was not to do any heavy lifting, pushing, pulling, or driving for long periods of time. *Id.*

On December 16, 1998, Dr. Coben performed a cervical MRI revealing mild reversal of the usual cervical lordosis and mild spinal stenosis at the C4-C5 level. (Tr. at 269.) The MRI also revealed mild foraminal narrowing at C4-C-5 level and disc protrusion at C3-C4 that did not indent the cervical cord. (Tr. at 270.)

On December 28, 1998, Plaintiff received a post-myelographic CT of the lumbar spine. (Tr. at 197-98.) Those test results revealed a disc bulge at L3-L4 causing mild acquired spinal stenosis, a herniated nucleus pulposus impacting the thecal sac at L4-L5, and disc herniation at L5-S1 touching but not compressing the thecal sac. *Id.*

During the following years, Plaintiff continued to see multiple physicians and chiropractors for his back pain.

On January 10, 2000, Kenneth J. Buley, M.D. ("Dr. Buley") prepared a report for the Texas Rehabilitation Commission Disability Determination Services based on his review of Plaintiff's

4

medical records and a physical exam.  (Tr. at 480-82.)  Dr. Buley's physical examination revealed

no muscle atrophy, normal muscle tone, and essentially negative straight leg raises; he also observed

that Plaintiff "ambulates with a normal gait pattern[.]"  (Tr. at 481.)  After reviewing Plaintiff's

history, physical exam, and test results, Dr. Buley opined, that Plaintiff had "pretty good standing

and walking tolerance[]" but could not stand and walk for prolonged periods of time.  *Id.*  Dr. Buley

also observed that Plaintiff could sit without much difficulty and lift up to 45 pounds.  *Id.*  Finally,

Dr. Buley recommended that Plaintiff continue his home exercise program, and not do repetitive

bending and lifting.  *Id.*

Craig C. Callewart, M.D. ("Dr. Callewart") examined Plaintiff on February 25, 2000.  (Tr.

at 130-31.)  Lumbar exam revealed that forward flexion exacerbated Plaintiff's pain.  (Tr. at 131.)

Plaintiff was unable to reverse lordosis or extend past neutral.  *Id.*  Plaintiff was able to heel and toe

stand and walk.  *Id.*  Dr. Callewart's impression was "[i]nternal disc derangement 5/1."  *Id.*  Dr.

Callewart also stated that Plaintiff would undergo a discogram in consideration of fusion.  *Id.*

In a note dated March 10, 2005, Dr. Callewart wrote that Plaintiff, was totally disabled from

his back injury, and that they were "currently working him up for possible lumbar fusion."  (Tr. at

129.)

In a letter dated April 26, 2000, Dr. Callewart noted that Plaintiff was unable to reverse

lumbar lordosis and had markedly restricted lumbar motion as well as diminished reflexes.  (Tr. at

127.)  Dr. Callewart also noted that Plaintiff had abnormal AP lateral flexion/extension x-rays,

lumbar myelogram, lumbar CT scan, and signal changes on his MRI.  *Id.*  On July 28, 2000, Dr.

Callewart noted that Plaintiff had continuous pain across his lumbar spine for two years and that

some days he had difficulty standing and performing the activities of daily living.  (Tr. at 126.)  Dr.

Callewart proposed scheduling surgery and referring Plaintiff for evaluation of depression and pre-surgical clearance.  *Id.*

In a note to the Tarrant County Department of Human Services dated August 8, 2000, Dr. Callewart stated that Plaintiff was totally disabled.  (Tr. at 125.)

On August 24, 2000, Plaintiff was evaluated by Ron Rebal, M.D. ("Dr. Rebal"), a psychiatrist.  (Tr. at 344-46.)  Plaintiff told Dr. Rebal that he was no longer taking medications for depression due to lack of insurance but that Paxil had helped him.  (Tr. at 344.)  Plaintiff wanted to have back surgery and return to work as soon as possible.  *Id.*  Dr. Rebal diagnosed anhedonia.  (Tr. at 345.)

On September 22, 2000, Plaintiff was examined by Andrew B. Dossett, M.D. ("Dr. Dossett"), for a second opinion prior to having surgery.  (Tr. at 336-38.)  Examination showed poor range of motion, secondary to pain.  (Tr. at 337.)  Forward flexion was about forty degrees and extension was minimally painful.  *Id.*  Dr. Dossett noted outside radiological studies including a discography of the lumbar spine performed on July 10, 2000 which showed "an abnormal appearance with posterior extravasation at L5-S1.  The lower disc did show concordant back pain." (Tr. at 338.)  Dr. Dossett agreed with the surgical proposal.  *Id.*

On November 3, 2000, Plaintiff returned to Dr. Callewart.  (Tr. at 123-24.)  Plaintiff still complained of continuous low back pain.  (Tr. at 123.)  Examination revealed a fifty percent reduction in right side turning and tenderness at C5-7.  *Id.*  Plaintiff was able to heel and toe stand, but flexion and extension of the lumbar spine exacerbated his pain.  *Id.*

Plaintiff underwent surgery on November 28, 2000, for disrupted degenerative disc, L5-S1, with radiculopathy.  (Tr. at 354.)  Upon discharge from the hospital, he was walking 150 feet

6

without a walker.  *Id.*

After surgery, Plaintiff returned to Dr. Callewart on January 9, 2001. (Tr. at 121.) Plaintiff's symptoms were markedly improved.  *Id.*  He did not feel pain when walking but sitting bothered him.  *Id.*  He was advised to engage in a home walking program.  *Id.*  By February 27, 2001, Plaintiff experienced pain only with exercising and prolonged walking.  (Tr. at 119.)

In a status report dated January 9, 2001, to the Texas Workers' Compensation Commission, Dr. Callewart stated that Plaintiff was "temp. totally disabled" from August 1998, through July 2001. (Tr. at 120.)  On March 30, 2001, Dr. Callewart found Plaintiff to be "temporarily totally disabled" and that " he would need to be sufficiently healed for work hardening until end of July or later." (Tr. at 518.)

On June 19, 2001. Dr. Callewart noted that Plaintiff no longer experienced lower extremity pain and was able to walk long distances.  (Tr. at 517.)  He noted that attempted running hurt but that Plaintiff could walk 30-40 minutes every other day.  *Id.*  Dr. Callewart opined that Plaintiff would be able to return to work as of September 1, 2001.  *Id.*

b.    Mental health problems

On March 26, 1999, Valerie V. Meshack, M.D. ("Dr. Meshack") performed a consultative psychiatric examination of Plaintiff. (Tr. at 450-53.) Plaintiff reported a history of depression since 1996. (Tr. at 450.)  Plaintiff felt his depression worsened after the accident.  (Tr. at 451.)  In the evaluation, Plaintiff denied hallucinations and paranoid or delusional thinking.  *Id.*  He also denied having any current suicidal ideation.  *Id.*  His attention and concentration appeared to be intact, and he was "fairly logical and coherent." (Tr. at 452.)  Plaintiff reported rising at the same time every morning, cooking and cleaning for himself, caring for his children every other weekend, and going

7

to church occasionally.  *Id*.  He also reported that he had a good relationship with his family in the Netherlands and that he had two friends on whom he could depend.  (Tr. at 451.)  Dr. Meshack's diagnoses included "major depressive disorder, moderate, recurrent as evidenced by sleep and appetite disturbance, decreased memory and concentration, anhedonia, decreased energy" and a current GAF of 30.  (Tr. at 453.)

A consultative psychiatric exam was performed by Peter C. Holm, M.D. on October 16, 2000.  (Tr. at 340-43.)  Plaintiff reported that his depression first occurred in April 1998, while going through a divorce.  (Tr. at 340.)  More recently, Plaintiff's ex-wife had moved out of state with their children, making visitation more difficult.  *Id*.  Plaintiff stated that he had never been depressed for more than a few days at a time.  *Id*.  Plaintiff denied taking any psychiatric medications since April 1999, when he no longer had insurance.  *Id*.  Plaintiff lived alone and was able to take care of his activities of daily living, limited secondary to back pain.  (Tr. at 342.)  Plaintiff's concentration was diminished.  *Id*.  Dr. Holm diagnosed adjustment disorder with depressed mood secondary to persistent back pain.  *Id*.  His GAF was 60 and the prognosis was "fairly good."  (Tr. at 343.)  With regard to Plaintiff's ability to manage any benefit award, Dr. Holm stated that "[h]e is aware of his diminished attention/concentration and so will spend extra time managing any such benefits.  He, currently, is managing his finances/bills without problems."  *Id*.

3.   Hearing Testimony

At the hearing on January 8, 2003, the ALJ heard testimony from Plaintiff and a vocational expert ("VE").  (Tr. at 565-602.)  Plaintiff was represented by counsel at the hearing.  (Tr. at 567.) Plaintiff testified that he was 53 years old.  (Tr. at 567.)  He also testified that he had completed the twelfth grade in school and attended college for two years.  (Tr. at 568.)  Plaintiff acknowledged that

he had gone back to work in September 2001, and stated that he worked as a truck driver.  (Tr. at 569, 571-72.)  Plaintiff testified that he had been unable to work mainly due to his back injury, and he described pain in his lower back that increased with any reaching or bending.  (Tr. at 574.)  He also testified that his pain medication helped some.  (Tr. at 575.)  Plaintiff stated that he lived alone and was able to perform housework, drive, and go shopping with pain.  (Tr. at 576.)  Plaintiff was able to walk short distances, and he could sit for half an hour to an hour and stand for only ten to fifteen minutes.  (Tr. at 578-79.)  Plaintiff spent seven hours during the day laying down.  (Tr. at 583.)  Plaintiff testified that he read newspapers but had some difficulty because English was not his first language.  (Tr. at 581.)  Plaintiff stated his medications made him sleepy.  (Tr. at 581-82.)  After the surgery, Plaintiff said that he had no pain, just some discomfort. (Tr. at 587.)  With respect to his depression, Plaintiff stated during the relevant time period after the previous decision, he had been nervous about the upcoming surgery.  (Tr. at 589.)

The ALJ posed a hypothetical question to the VE, assuming an individual with a high school education and one and a half years of college who could perform light work, but required a numerous opportunities to sit or stand throughout the workday.  (Tr. at 594.)  The hypothetical individual could not climb, balance, crawl or kneel, could do no more than occasional squatting, stooping, or crouching, could not engage in repeated pushing, pulling, or extended reaching.  *Id.*  The ALJ also limited the individual to generally simple tasks to account for a less than moderate concentration deficit.  *Id.*  The VE testified that such a person could not perform Plaintiff's past work.  *Id.*  However, she stated that such an individual could perform the job of courtesy van driver, which was skilled light work.  *Id.*  In the realm of light unskilled work, the VE identified the jobs of simple assembler, hand laborer, cashier, toll collector, and sorter, inspector.  (Tr. at 595.)

C.      *ALJ's Findings*

The ALJ issued his findings on January 30, 2003. He found that Plaintiff had not engaged in substantial gainful activity since his alleged date of onset of disability, and that he suffered from post-traumatic lumbar disc disease and adjustment disorder with depressed mood, secondary to back pain. (Tr. at 29.) The ALJ concluded that Plaintiff's impairments would have more than a slight effect on his ability to work, and therefore were severe. *Id.* The ALJ found that Plaintiff had no impairment of the same as or equal to impairments set forth in the listing of impairments at Appendix 1 of 20 C.F.R. Part 404, Subpart P. *Id.*

The ALJ noted that Plaintiff's back problems were attributable to a big rig accident in August 1998. (Tr. at 30.) Medical evidence showed moderately reduced lumbar range of motion with pain, but Plaintiff had a normal gait. *Id.* The ALJ noted that tests revealed no evidence of nerve root compression, but that there was lumbar disc disruption at L5-S1. *Id.* The ALJ noted that Plaintiff underwent back surgery on November 28, 2000, which was successful. (Tr. at 29, 30.) Plaintiff returned to work in September 2001. *Id.*

The ALJ found that during the period at issue, Plaintiff had the residual functional capacity to perform a modified range of light work. (Tr. at 30.) The ALJ noted that Plaintiff was limited by an inability to climb, balance, kneel, or crawl, and could squat, stoop, or crouch only occasionally. (Tr. at 31.) In addition, the ALJ found that Plaintiff required a job where he had the option to sit or stand, and he could not engage in repetitive pushing, pulling, or extended stretching. *Id.*

With regard to Plaintiff's depression, the ALJ relied upon the October 2000 consultative examination. (Tr. at 31.) The ALJ determined that Plaintiff's adjustment disorder with depressed mood secondary to back pain mildly restricted Plaintiff's activities of daily living, created mild

difficulty in maintaining social functioning, caused mild deficiencies of concentration, persistence, or pace, but never resulted in episodes of deterioration or decompensation in work or work-like settings. *Id.* The ALJ noted that Plaintiff reported never being depressed more than a few days at a time and was independent in all activities of daily living. (Tr. at 31-32.)

The ALJ determined that Plaintiff was unable to return to his past work. (Tr. at 32.) Because Plaintiff could not perform the full range of light work, the ALJ relied on the testimony of a VE to determine whether he could perform other work in the national economy. *Id.* The ALJ found that Plaintiff could perform the job of hand laborer, with 8,000 - 10,000 jobs in the Texas, as a sorter/inspector, with up to 6,000 - 7,000 jobs in Texas, or as a cashier/toll collector with 3,000 - 5,000 jobs in the Texas. (Tr. at 32-33.) The ALJ therefore determined that Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## II.   ANALYSIS

### A.   *Legal Standards*

#### 1.   Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

      2.   <u>Disability Determination</u>

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes the following sequential five-step analysis to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564.  The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.      *Issues for Review***

Plaintiff presents the following nineteen issues[3] for review:

(1)      The ALJ erred in rejecting the opinions of Plaintiff's treating physicians and in failing to acknowledge all restrictions imposed by the treating physician;

(2)      The description of Plaintiff's education in the file is apparently incorrect and Plaintiff's responses in that regard reflect his lack of fluency in the English language. Furthermore, the Appeals Council does not appear to have either admitted into evidence, nor considered, certain materials submitted to it by counsel for Plaintiff;

---

[3]Plaintiff's counsel has previously been admonished by several courts for raising numerous possible grounds of error without adequate briefing or basis rather than focusing and properly presenting only strong arguments for appeal.  *See e.g. Van Zanten v. Commissioner*, 3:02-CV-2649-P, at 16 n.5 (N.D. Tex. July 25, 2005) (findings and recommendation adopted by order issued March 28, 2006) (21 grounds of error raised); *Morgan v. Barnhart*, 3:02-CV-2397-N (N.D. Tex.) (findings and recommendation issued December 19, 2003; order adopting findings and recommendation issued January 6, 2004) (21 grounds of error raised); *Williams v. Barnhart*, 3:03-CV-109-P (N.D. Tex.) (findings and recommendation issued December 31, 2003, order adopting findings and recommendation issued January 9, 2004) (16 grounds of error raised).  These deficiencies are present in the instant brief.  Counsel is again cautioned to heed the admonishments he has received and remedy such deficiencies in future filings.

(3)     The ALJ erred in failing to properly address the issue of Plaintiff's literacy in the English language;

(4)     The ALJ erred in failing to call an interpreter in this case;

(5)     The ALJ erred in failing to include all relevant impairments in his hypothetical questions to the Vocational Expert, thereby requiring at least a remand in this claim;

(6)     The ALJ's reference to 20 C.F.R. § 404.1529 is insufficient to satisfy the requirements of Social Security Ruling 96-7p, in the absence of a sufficient discussion of the evidence; in this case, the ALJ merely referred to the section without even reciting its requirements;

(7)     The ALJ failed to adequately consider issues relating to Plaintiff's medications;

(8)     The ALJ's finding of some lack of credibility on the part of Plaintiff is flawed;

(9)     The ALJ erred in not adequately considering all of Plaintiff's impairments;

(10)    The ALJ inadvertently failed to properly consider Plaintiff's allegations of pain or the ALJ inadvertently failed to follow the requirements of certain Social Security Rulings;

(11)    The ALJ failed to adequately consider issues relating to measures used by Plaintiff to relieve his pain or other symptoms;

(12)    The ALJ failed to fully and fairly develop the facts as required by Fifth Circuit jurisprudence.  The ALJ failed to properly develop the medical record in this case;

(13)    The ALJ erred in not seeking the testimony of a medical expert in this case;

(14)    The ALJ drew inappropriate conclusions from the evidence;

(15)    The ALJ erred in failing to explain how he arrived at the residual functional capacity he created;

(16)    The ALJ erred in failing to adequately consider the applicability of the Listings in this case;

(17)    The ALJ erred in stating that Plaintiff was requesting a closed period of disability in connection with this claim;

(18)    The ALJ failed to follow the established legal standard for determining the severity of an impairment; and

14

(19)    A portion of the audiotape of the hearing provided to counsel by the Appeals Council was inaudible;

**C.      Issue One: Opinions of, and Restrictions Imposed by, Treating Physicians and Health Care Providers**

Plaintiff first contends that "[t]he ALJ erred in rejecting the opinions of plaintiff's treating physicians and in failing to acknowledge all restrictions imposed by the treating physician."  (Pl.'s Br. at 3-6.)  Under this heading, Plaintiff complains of the ALJ's alleged failure to give controlling weight to the treating physicians' opinions.[4]  *Id.*

An ALJ is required to evaluate every medical opinion received and set forth the weight given those opinions.   20 C.F.R. § 404.1527(d); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). However, if good cause exists, an ALJ may give a treating physician's opinions little or no weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456.  Thus, "[t]he treating physician's opinions are not conclusive."  *Id*. at 455.  "Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has the sole

---

[4]In this section, Plaintiff also complains of mischaracterization of the evidence, failure to explain the residual functional capacity, and inadequate hypothetical question.  As all those issues are addressed later in Plaintiff's brief, the Court will address them in the order presented in the brief.

responsibility for determining a claimant's disability status.'" *Martinez*, 64 F.2d at 176 (quoting

*Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  "[T]he ALJ is free to reject the opinion of

any physician when the evidence supports a contrary conclusion." *Martinez*, 64 F.2d at 176 (quoting

*Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

The Fifth Circuit in *Newton* held that "absent reliable medical evidence from a treating

or examining physician controverting the claimant's treating specialist, an ALJ may reject the

opinion of the treating physician only if the ALJ performs a detailed analysis of the

treating physician's views under the criteria set forth in 20. C.F.R. § 404.1527(d)(2)." Thus, before

deciding not to give any weight to a treating physician's opinion, an ALJ must consider: (1) the

physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3)

the nature and extent of the treatment relationship; (4) the support of the physician's opinion

afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a

whole; and (6) the specialization of the treating physician.  *Newton*, 209 F.3d at 456 (citing 20

C.F.R. § 1527(d)(2)).  If the ALJ fails to consider the requisite criteria, the case must be remanded.

*Locke v. Massanari*, 285 F. Supp.2d 784, 795 (S.D. Tex. 2001).   However, the

court expressly excluded from the scope of *Newton* cases "where there is competing first-hand

medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-

founded than another" and cases in which "the ALJ weighs the treating physician's opinion on

disability against the medical opinion of other physicians who have treated or examined the claimant

and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458.  Thus, "*Newton*

is limited to circumstances where the administrative law judge summarily rejects the opinions of a

claimant's   treating   physician,   based   only   on   the   testimony   of   a   non-

16

specialty medical expert who had not examined the claimant." *Contreras v. Massanari*, 2001 WL

520815, at *4 (N.D. Tex. May 14, 2001); *see also Newton*, 209 F.3d at 458; *Pedraza v. Barnhart*,

2003 WL 22231292, at *5 (W.D. Tex. Sept. 15, 2003).

Plaintiff argues that "the ALJ should have given controlling weight to the treating physicians'

opinions regarding Plaintiff's restrictions and the fact that he cannot work."   (Pl.'s Br. at 6.)

Although Plaintiff singles out several medical notes which he believes should have been mentioned

in the ALJ's decision, none of the notes which he points to contain exertional or nonexertional

restrictions imposed by Plaintiff's treating physicians.   Plaintiff does not point the Court to any

medical opinion in the record which contradicts the ALJ's finding as to Plaintiff's RFC.  With respect

to Dr. Callewart's status reports which opined that Plaintiff was "totally disabled" or "temporarily

totally disabled" (Tr. at 120, 125, 517, 518), the Court notes that these opinions are conclusory and

go to the issue of disability status, an issue solely within the province of the ALJ.   *See Martinez*, 64

F.2d at 176.    "[T]he ALJ has sole responsibility for determining a claimant's disability status."

*Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  "Among the

opinions by treating doctors that have no special significance are determinations that an applicant is

'disabled' or 'unable to work.'"  *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20

C.F.R. 4041527(e) & (e)(3)).   Such determinations are legal conclusions reserved by regulation to

the Commissioner.  *Frank*, 326 F.3d at 620.

Because the ALJ had sole responsibility for determining Plaintiff's disability status, the ALJ

did not err in rejecting Dr. Callewart's statement that Plaintiff was disabled.  As the ALJ did not

reject the opinions of Plaintiff's treating physicians as to the restrictions imposed on him by his

impairments, this point of error should not be sustained.

**D.      Issue 2: Plaintiff's Education**

Plaintiff contends that the description of his education in the file is incorrect.  (Pl.'s Br. at 6.)

Because the ALJ considered erroneous information with regard to Plaintiff's education, and because

the Appeals Council failed to admit or consider evidence showing that Plaintiff's educational level

was lower than described, Plaintiff claims he was prejudiced.  *Id*. at 6-8.    In particular, Plaintiff

argues that his lack of education "would of course be relevant to vocational issues and, potentially,

to the application of a medical-vocational guideline or grid."  *Id*. at 7.

In his application for benefits, Plaintiff stated that he completed twelve years of schooling in

the Netherlands.  (Tr. at 87.)  During the hearing, Plaintiff told the ALJ that he completed twelve

years of schooling and two years of college.  (Tr. at 568.)  The ALJ relied upon the information

reported by Plaintiff in his application and at the hearing.  Notably, Plaintiff's counsel was at the

hearing and did not attempt to correct the allegedly erroneous information given by Plaintiff.

Plaintiff now relies upon a statement given in a previous application for benefits.  There, Plaintiff

stated that he completed lower school and two years of basic training school in the Netherlands.

(Pl.'s Br. Exh. B.)  Other than noting that the two applications for benefits were contradictory,

Plaintiff provided neither the Appeals Council nor this Court with evidence indicating which

educational claim was accurate.

Even assuming that the information provided to the ALJ by Plaintiff was inaccurate and that

the revised information should have been considered by the Appeals Council, Plaintiff has failed to

show prejudice.  In making his determination that Plaintiff could work, the ALJ did not rely on the

medical vocational guidelines because he had found Plaintiff's ability to perform light work to be

compromised.  (Tr. at 32.)  Instead, the ALJ relied on the VE's testimony.  *Id.*  Although the VE was

18

also supplied with the same educational information given by Plaintiff to the ALJ, the jobs she identified which were relied upon by the ALJ were unskilled occupations. *Id*.

Plaintiff does not claim that his educational level eliminates his ability to perform the jobs set forth by the ALJ in his decision. Accordingly, any alleged error in the recounting of Plaintiff's educational level was not prejudicial and does not require reversal.

**E.      Issue 3: Literacy in the English Language**

Plaintiff contends that the ALJ did not properly address Plaintiff's literacy in the English language because the ALJ failed to determine Plaintiff's level of competency in speaking, reading, and writing in English. (Pl.'s Br. at 8-9.) Plaintiff does not point to any legal error in how the ALJ addressed Plaintiff's literacy. Merely making a general assertion that the ALJ erred is insufficient to warrant reversal. Rather, Plaintiff must show that he was prejudiced. *See Parham v. Barnhart*, CA 3:05-CV-1043-D, slip. op. at 11 (N.D. Tex. Apr. 28, 2006) (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

On the Disability Report Plaintiff submitted to the Social Security Administration, he stated that he could speak, read, and write more than his name in English. (Tr. at 80.) At the hearing, Plaintiff testified that he read newspapers but that there were some words that he did not understand (Tr. at 576-77, 581.) Although Plaintiff's testimony demonstrated some grammatical errors, particularly as to tense, the ALJ was able to understand him. (Tr. at 578.)

The testimony reflects Plaintiff's ability to communicate in English, despite some errors in syntax and grammar, and Plaintiff has not alleged that he was prejudiced in any way by the ALJ's failure to make a finding as to his literacy in the English language. Thus, reversal on this ground would be inappropriate.

**F.      Issue 4:  Interpreter**

Plaintiff also contends that the "ALJ's failure to secure the services of an interpreter to translate at the hearing means that Plaintiff may not have been able to fully express himself, may not have fully understood the questions asked of him, and the proceedings at [sic] general, and that therefore the ALJ may not have arrived at a decision based on the benefits of fully informed testimony."  (Pl.'s Br. at 9.)

Plaintiff provides no authority supporting his contention that the ALJ erred in failing to call an interpreter in this case.  The Court located one case discussing at length a claimant's right to an interpreter.  In *Di Paolo v. Barnhart*, the claimant testified at the hearing that she was from Venezuela and spoke Spanish, Italian, and a little English.  2002 WL 257676, at *1 (E.D.N.Y. Feb. 8, 2002).  At the beginning of the hearing, the claimant's counsel told the ALJ that the claimant's disability report stated that she "'hardly spoke English,'" thus indicating a need for an interpreter. *Id*. at *5.  The district court found that the claimant's "inability to communicate in English was evident throughout the proceeding." *Id*.  Both the ALJ and the claimant's attorney struggled to phrase questions in a manner that she would understand; at one point in the testimony, the ALJ had the medical expert attempt to communicate with the claimant in Italian. *Id*.  Because the claimant's need for an interpreter "should have been recognized before the hearing" and "was obvious at the outset of the hearing," the district court remanded the case for a hearing with an interpreter to ensure that the claimant receive a full and fair hearing. *Id*. at 9.

The instant situation is clearly distinguishable.  First, Plaintiff did not indicate the need for an interpreter prior to the hearing.  HALLEX, the Social Security Administration's manual on Hearings, Appeals and Litigation Law, directs ALJs to determine whether a claimant needs an

interpreter by reviewing several items, including the Request for Hearing form and the Disability Report, as well as any reports of contact with the claimant or other statements indicating the need for an interpreter. *See* http://www.ssa.gov/OP_Home/hallex/I-02/I-2-1-70.html. On Plaintiff's Request for Hearing form, neither Plaintiff nor his attorney, both of whom signed the form, checked the box indicating a need for an interpreter. (Tr. at 42.) In Plaintiff's Disability Report, he indicated that he could speak, read, and write more than his name in English. (Tr. at 80.) Thus, Plaintiff and his counsel gave no indication prior to the hearing that an interpreter would be needed.

At the hearing, neither Plaintiff nor his counsel requested an interpreter. Notably, Plaintiff's counsel listed the lack of an interpreter in Plaintiff's previous appeal, but did not see fit to request one at the subsequent hearing in this matter. (*See Van Zanten v. Commissioner*, 3:02-CV-2649-P, slip op. at 39-41 (N.D. Tex. July 25, 2005). The transcript of the testimony does not indicate that an interpreter was needed. The only point of error set forth by Plaintiff is the fact that he erred in using present tense when meaning to answer in the past tense. (Pl.'s Br. at 9; Tr. at 580.) The confusion on that point was cleared up.

Plaintiff does not show that any prejudice occurred due to the failure to have an interpreter present. Accordingly, the Court finds that the ALJ did not err in declining to call for an interpreter in this case.

## G.      Issue 5: Impairments Included in Hypothetical Question

Plaintiff contends that the ALJ erred by failing to include in the hypothetical question the issues of: (1) Plaintiff's mild restrictions in activities of daily living and in maintaining social functioning; (2) Plaintiff's literacy or proficiency in the English language; (3) Plaintiff's testimony about lying down; and (4) Dr. Buley's recommendation that Plaintiff not engage in repeated bending

and lifting activities.  (Pl.'s Br. at 10-11.)  Plaintiff does not state how he was prejudiced by these alleged errors.

To establish that work exists for a claimant, the ALJ relies on the medical-vocational guidelines or the testimony of a VE in response to a hypothetical question.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question.  *Bowling*, 36 F.3d at 436.  A claimant's failure to point out deficiencies in a hypothetical question does not "automatically salvage that hypothetical as a proper basis for a determination of non-disability."  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).  If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that despite his impairment the claimant could perform available work.  *Id.* at 708.

The ALJ posed a hypothetical question to the VE and asked her to:

Assume an individual with a high school education with one and a half, one and a half years of college, with - - who at the time in question was 50 years of age and with a residual functional capacity for only light work.  But needing numerous opportunities to sit or stand throughout the workday.  No climbing, balancing, kneeling or crouching.  No repetitive pushing or pulling with the upper extremities.  No extended repetitive reaching.  A less than moderate concentration deficit and limited to simple tasks.

(Tr. at 594.)  Based on this hypothetical question, the VE opined that although Plaintiff could not perform his past work, he could perform jobs such as a courtesy van driver, simple assembler or hand laborer, parking garage cashier, toll collector, and sorter, inspector.   (Tr. at 594-96.)  Plaintiff's attorney then posed additional questions to the VE concerning the effect of a need to lay down for seven hours during the day on Plaintiff's ability to work.  (Tr. at 600.)  The VE testified that if

Plaintiff had to leave his work station during the day to lay down, he would not remain competitively employed.  *Id.*

The ALJ determined that Plaintiff retained the RFC to perform less than the full range of light work, noting that Plaintiff could lift or carry no more than twenty pounds occasionally or no more than ten pounds on a regular basis, and would need to frequently sit or stand at his option.  (Tr. at 33-34.)  Additionally, the ALJ found that Plaintiff should do no repetitive pushing or pulling with his upper extremities, no repetitive reaching, no climbing, balancing, kneeling, or crawling, and should do only occasional stooping, crouching, or squatting.  (Tr. at 31.)  Although the ALJ noted that Plaintiff's "depressed mood secondary to back pain has mildly restricted his activities of daily living," the ALJ did not incorporate any mental limitations in his RFC finding.  *Id.*  Additionally, in his assessment of Plaintiff's RFC, the ALJ did not recognize any limitations based on Plaintiff's literacy or proficiency in the English language, any limitations on Plaintiff's ability to bend, or a need to lie down during the day.

Because the hypothetical question propounded to the VE reasonably incorporated all of the limitations recognized by the ALJ in the RFC, the question was not in error.  *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

**H.      Issue 6:  Requirements of 20 C.F.R.  § 404.1529 and SSR 96-7**

Plaintiff asserts that "[t]he ALJ's reference to 20 C.F.R. 404.1529 is insufficient to satisfy the requirements of SSR 96-7p, in the absence of a sufficient discussion of the evidence. . . ."  (Pl.'s Br. at 12.)  Plaintiff contends further that "mere recitation of legal requirements should of course not be sufficient, real consideration being evidenced by a detailed discussion of the evidence as it relates to each factor."  *Id.*  As Plaintiff does not fully brief this issue in this section and as he raises it again later in his brief, the Court considers the issue below in relation to his more specific objections.

**I.      Issue 7: Medications**

Plaintiff argues that "the ALJ failed to adequately, if indeed at all, inquire into any side effects of the medications, or to how the pain medications give, or fail to give, relief."  (Pl.'s Br. at 13.)  Plaintiff argues that such analysis was required by 20 C.F.R. § 404.1529(c)(3)(I) to (vii).  Only subsection (iv) of that regulation relates to medication, and provides that "[f]actors relevant to your symptoms, such as pain, which we will consider include: (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"

Plaintiff believes that the ALJ erred in failing to comment in his decision on Plaintiff's testimony that Lortab and Buspar made him drowsy.  (Tr. at 13.)  At the hearing, Plaintiff's counsel asked Plaintiff about the side effects of his medications.  (Tr. at 582-83.)  Plaintiff stated that both Lortab and Buspar made him drowsy.  *Id.*  Plaintiff did not testify further concerning the severity of his drowsiness or how it might have impacted his activities of daily living.  In his decision, the ALJ noted that Plaintiff "experienced drowsiness from Lortab and Buspar, but not from Paxil."  (Tr. at 29.)  Plaintiff does not argue that other evidence in the record demonstrates significant side effects caused by Plaintiff's medications.

Because the ALJ did address the side effects of Plaintiff's medications in the decision and because Plaintiff does not claim that the side effects of his medications were such that they would have negatively impacted his RFC, the Court finds no error.

**J.      Issue 8: Credibility Finding**

Plaintiff takes issue with the ALJ's credibility finding.  (Pl.'s Br. at 13-14.)  Plaintiff states that he "can find no substantial discussion regarding Plaintiff's credibility in the body of the

decision." *Id.* at 13.[5]

"Credibility determinations are generally the province of the ALJ and are entitled to deference." *Lam v. Apfel*, 2000 WL 354393, *4 (N.D. Tex. Apr. 5, 2000). Therefore, courts will reverse an ALJ's credibility determination only if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). The ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

Social Security Ruling 96-7p establishes a two-pronged test the ALJ must follow when evaluating the credibility of a claimant's complaints of pain. First, the ALJ must determine if there is an underlying medically determinable physical impairment that could reasonably be expected to produce the individual's pain. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Second, "the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* According to SSR 96-7p, 20 C.F.R. § 404.1529(c) "describes the kinds of evidence . . . that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" *Id.* Those factors include: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of his pain; (3) factors that precipitate and aggravate the pain; (4) the type, dosage, effectiveness, and side effects of medication taken to relieve the pain; (5) treatment other than medication used for pain relief; (6) measures other than

---

[5]Plaintiff also raises the ALJ's alleged mischaracterization of the evidence and his failure to discuss Plaintiff's testimony concerning his need to lie down. (Pl.'s Br. at 13.) As Plaintiff addressed those arguments in other sections of his brief, the Court will not consider them in connection with the credibility issue.

treatment used to relieve pain, such as lying flat; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain. *Id.* "If on [42 U.S.C.] § 405(g) review the court finds that the ALJ followed the proper procedures and considered the relevant factors, the ALJ's determination is ordinarily conclusive." *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1027 (E.D. Wis. 2004).

In his decision, the ALJ stated that "Mr. Vanzanten's statements concerning his impairments and their impact on his ability to work are credible to the extent that he has medical difficulties that impede his ability to perform some types of work; however, in light of the reports of the treating and examining practitioners, the medical history, and the testimony of the expert witness, his allegation of disability is not supported." (Tr. at 29-30.)  After reviewing the medical evidence, the ALJ stated that "neither the objective medical evidence nor [Plaintiff's] testimony, in addition to considering non-medical evidence, establishes that his ability to function was so severely impaired as to preclude the exertional requirements of work at the light level of exertion." (Tr. at 31.)  The ALJ noted that the medical evidence and the opinions of the examining physicians identified "no abnormal musculoskeletal pathology or neurological disorder that could reasonably be expected to produce the substantial limitations he has alleged during the entire period at issue." *Id.*  In the decision, the ALJ discussed many of the factors listed in 20 C.F.R § 404.1529(c) and SSR 96-7p, including Plaintiff's daily activities, the type of Plaintiff's pain medications, the location, duration, frequency, and intensity of his pain, the kinds of treatment he has had, and the observations of treating and reviewing physicians. (Tr. at 29-32.)

Because of the deference to be accorded to the ALJ's credibility determination, and because the ALJ did specify the reasons for his finding, the Court concludes that substantial evidence supports the ALJ's credibility determination.

26

**K:     Issue 9: Consideration of Plaintiff's Impairments**

Plaintiff argues that "[t]he ALJ did not place sufficient emphasis, by way of example, on Plaintiff's mental/emotional impairments." (Pl.'s Br. at 14.)  Plaintiff also contends that the ALJ's allegedly inadequate discussion of Plaintiff's depression "raise[s] the issue of the interplay of his various impairments, and whether the ALJ has adequately, if at all, examined the effect of his various impairments in combination." *Id.*  Other than those general assertions, Plaintiff does not explain what he believes was missing from the ALJ's recitation of Plaintiff's mental impairments or how the inclusion of the allegedly missing information would have changed the outcome of this case.

The ALJ specifically considered and discussed Plaintiff's depression in the body of his decision.  (Tr. at 31-32.)  Plaintiff has not shown that the ALJ committed reversible error in his consideration of Plaintiff's impairments.

**L.     Issue 10: Consideration of Plaintiff's Allegations of Pain**

Plaintiff contends that "the ALJ failed to adequately discuss pain in his decision, as required by SSR 96-3p . . . and SSR 96-7p." (Pl.'s Br. at 14.)  Plaintiff also contends that the "ALJ should have considered the impact that work activity would have (had) on Plaintiff and discussed 'the ability to perform sustained work activities in an ordinary work setting, on a regular and continuing basis' for forty hours each week, in accordance with SSR 96-8." *Id.*

Social Security Ruling 96-3p addresses how an ALJ should evaluate allegations of pain in determining whether an impairment is "severe" at step two of the sequential evaluation process.  *See* SSR 96-3p.  The scope of SSR 96-3p is limited to the severity analysis at step two.  Thus, if an ALJ makes a finding of severity at step two and proceeds to the next step of the sequential evaluation process, non-compliance with the requirements of SSR 96-3p will not affect the outcome.  *See Harrison v. Massanari*, 2001 WL 637364, at *10 (E.D. La. June 7, 2001) (rejecting claims of error

in the ALJ's severity analysis pursuant to 96-3p, as the ALJ proceeded to the next step in the sequential process analysis; thus, any alleged errors at step 2 were immaterial to the outcome).  In the instant matter, the ALJ determined at step 2 that the Plaintiff's impairments were severe.  Thus, the ALJ's alleged failure to comply with SSR 96-3p constitutes harmless error, and does not justify reversal.

As noted in Section 2J above, Social Security Ruling 96-7p requires the ALJ to make a credibility finding on a claimant's subjective allegations of pain based on the entire case record.  SSR 96-7p; *Beck v. Barnhart*, 2006 WL 3059955, *5 (5th Cir. Oct. 27, 2006).  The decision must contain specific reasons for the finding on credibility, supported by the evidence.  *Id.*  This Court has previously found that the ALJ's decision did comply with the requirements of SSR 96-7p.

The Court next addresses Plaintiff's claim with respect to SSR 96-8p.  SSR 96-8p guides the assessment of residual functional capacity.  SSR 96-8p.  Plaintiff appears to allege that the ALJ failed to include the following elements in his narrative discussion of Plaintiff's RFC, as required by SSR 96-8p:

In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

* Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

* Include a resolution of any inconsistencies in the evidence as a whole; and

* Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

*Id*.  Plaintiff does not state which of the above elements he believes the ALJ neglected to address.

A review of the ALJ's decision reveals that the ALJ adequately addressed the elements above.  The ALJ discussed the medical evidence and the reports of the treating and evaluating physicians.

(Tr. at 29-31.) The ALJ also noted Plaintiff's testimony regarding his allegations of pain. (Tr. at 29.) With respect to the third element, the ALJ set forth a logical explanation of the effects of Plaintiff's pain on his ability to work , noting that medication was effective in reducing Plaintiff's pain and that Plaintiff was independent in all activities of daily living. (Tr.  at 31.)

For the foregoing reasons, the Court concludes that the ALJ properly considered Plaintiff's allegations of pain and that substantial evidence in the record supports the ALJ's findings on this issue.

## M.       Issue 11: Measures Used by Plaintiff to Relieve Pain

Plaintiff contends that "the ALJ failed to adequately inquire into and consider measures used by Plaintiff to relieve his pain or other symptoms." (Pl.'s Br. at 16.) Plaintiff points to his testimony that he lies down while at home and that he takes medication to relieve pain. (Pl.'s Br. at 13.)

At the hearing, Plaintiff testified that during the relevant period he would lie flat for seven hours during the day to relieve him of the pain and swelling in his back. (Tr.  at 583-84.)  In recounting Plaintiff's testimony, the ALJ did not specifically discuss his claim that he needed to lie down for a significant portion of the day.  However, the ALJ did note that Plaintiff spent most of his days resting. (Tr. at 29.) The ALJ also discussed Plaintiff's use of pain medications. (Tr. at 29; 31.)

Assuming, *arguendo*, that the ALJ failed to fulfill his duty to develop the record in this respect, Plaintiff has failed to show that he was prejudiced.  He does not explain how sufficient consideration of these measures would have changed the outcome of his case.  Accordingly, reversal of the ALJ's decision is not appropriate on this ground.  *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) ("To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'") (quoting *Kane v. Heckler*, 731 F.2d 1216, 1226 (5th Cir. 1984)).

### N.        Issue 12: Duty to Develop the Record

Plaintiff next contends that the ALJ failed to fully and fairly develop the facts, as required by *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  (Pl.'s Br. at 16.)  In *Ripley*, the Fifth Circuit stated that "[t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  67 F.3d at 557 (citing *Pierre*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane*, 731 F.2d at 1219).  Failure to develop an adequate record is not per se grounds for reversal.  *Kane*, 731 F.2d at 1220.  Plaintiff must show that he "'could and would have adduced evidence that might have altered the result.'"  *Brock*, 84 F.3d at 728 (quoting *Kane*, 731 F.2d. at 1226).

Plaintiff's brief includes only the following statement in support of his contention that the ALJ failed to fully develop the record: "[t]he plaintiff was clearly prejudiced by the ALJ's failure to develop the record, as is evidenced by the inadequate discussion of matters related to his non-exertional/mental impairments, by way of example, as well as pain and medication." (Pl.'s Br. at 16.) This single sentence does not suffice to meet the required showing of prejudice.  Plaintiff does not specify what additional evidence a full development of the record would have yielded, nor has he shown that such evidence could or would have led to a different decision.  Because Plaintiff has failed to show that he was prejudiced, the ALJ's decision should not be reversed on this ground.

### O.        Issue 13: Medical Expert Testimony

Plaintiff contends that "[t]he ALJ erred in not seeking the assistance of a medical expert in this case."  (Pl.'s Br. at 17.)  Specifically, Plaintiff points to the ALJ's determination that "'[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairments.'"  *Id*. (citing Tr. at 28.)  Plaintiff cites no authority in support of the contention that  an ALJ cannot make a determination with respect to the listings without the assistance of a medical expert.

An ALJ is not required to obtain the testimony of an medical expert ("ME"). 20 C.F.R. § 404.1527(f)(2)(iii) ("[ALJs] *may* also ask for and consider opinions from medical experts.") (emphasis added); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). An ALJ thus need not seek the assistance of an ME to determine whether a claimant's impairments equal the requirements of an impairment in the Listings. *See Kruchek v. Barnhart*, 125 Fed. Appx. 825, 827 (9th Cir. 2005) (finding that, pursuant to 20 C.F.R. 404.1527(f)(2(iii), 416.945, and 416.946, "the use of an ME for the step-three medical equivalency determination is permissive, not mandatory"); *Lafitte v. Apfel*, 81 F. Supp. 2d. 669, 673-674 (W.D. La. 1999) (finding no error based on ALJ's determination, without the assistance of a medical expert, that the plaintiff's impairments did not meet the requirements of the Listings); *Shelton v. Sullivan*, 1994 WL 848758, at *10 (W.D. La. Nov. 10, 1994) ("the ALJ was within his discretion in this case not to call upon a medical expert to assist him in making a decision [as to whether the plaintiff's impairments met the Listings].")

Here, the ALJ based his findings on the entire record, including the medical records submitted by Plaintiff's treating and examining physicians, as well as the opinions of medical consultants, pursuant to 20 C.F.R. § 404.1527. (Tr. at 28.) The available medical evidence was adequate and supported the ALJ's decision. Accordingly, the ALJ did not err in making a determination with respect to the Listings without the assistance of a medical expert. *See, e.g. Hollis v. Comm'r of Soc. Sec.*, 116 Fed. Appx. 396, 398 (3rd Cir. 2004) (finding no error where the ALJ made a determination based on the Listings without seeking a medical expert, because the decision to consult a medical expert is discretionary, and not necessary where available medical evidence was adequate and supported the ALJ's decision).

## P.      Issue 14:  ALJ's Conclusions from Evidence

Plaintiff contends generally that the "ALJ drew inappropriate conclusions from the evidence."

(Pl.'s Br. at 17.)  As examples, Plaintiff cites several instances where the ALJ discussed a particular piece of medical evidence but did not note specific comments which Plaintiff feels were important. (Pl.'s Br. at 5-6.)

The ALJ has a duty to fully and fairly develop the facts relevant to a claim for benefits.  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  Failure to develop an adequate record is not *per se* grounds for reversal.  *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).  Plaintiff must show that Plaintiff "could and would have adduced evidence that might have altered the result."  *Id.*

In his decision, the ALJ notes a January 26, 2000 visit to Dr. Williams wherein no evidence of nerve root compression was found.  (Tr. at 30.)  Plaintiff objects to the failure to include the diagnosis of "degenerative disc disease with no evidence of nerve root compression."  (Pl.'s Br. at 4; Tr. at 297.)  Plaintiff does not explain further how the omission prejudiced him, particularly as the ALJ did find that Plaintiff suffered from "post-traumatic lumbar disc disease."  (Tr. at 29, 33.)

Plaintiff also objects to the ALJ's description of a September 22, 2000 doctor's visit.  (Pl.'s Br. at 4.)  The ALJ noted "poor range of motion secondary to pain," minimally painful extension, diffuse tenderness along the spine, and testing suggesting lumbar disc disruption at L5/S1.  (Tr. at 30.)  Plaintiff appears to object to the failure to fully quote from the test results referenced by the ALJ.  (Pl.'s Br. at 4.)  The full quote is "an abnormal appearance with posterior extravasation at L5-S1.  The lower disc did show concordant back pain."  (Tr. at 338.)  Because the ALJ did note Plaintiff's pain and the disruption at L5-S1, there is no error.

Plaintiff's objection to the ALJ's failure to discuss Dr. Callewart's opinions as to Plaintiff's disability status was discussed in Section A above and does not merit reversal.

Plaintiff also complains that although the ALJ discussed a consultative psychiatric examination on October 16, 2000, he failed to note Plaintiff's diminished concentration.  (Pl.'s Br.

at 5.)  The ALJ conducted a thorough discussion of the doctor's findings, (Tr. at 31-32.), but he did not note the finding that Plaintiff's concentration was "diminished", (Tr. at 342).  In discussing Plaintiff's "diminished" concentration as pertained to his capability to manage benefits, Dr. Holm stated that Plaintiff was "aware of his diminished attention/concentration and so will spend extra time managing any such benefits.  He, currently, is managing his finances/bills without problems."  (Tr. at 343.)  Notably, Dr. Holms did not appear to believe that Plaintiff's diminished concentration was such that it would have more than a minor negative impact on Plaintiff's activities of daily living, requiring him to spend extra time attending to details.  Plaintiff also complains of the ALJ's failure to mention the finding that Plaintiff's ability to cook, shop, etc. were "limited secondary to back pain only."  (Pl.'s Br. at 5) (quoting Tr. at 342.)  Plaintiff fails to show how the inclusion of these findings would have altered the result.  Accordingly, the Court finds no error in the ALJ's failure to mention that specific finding.

Lastly, Plaintiff objects to the ALJ's failure to mention the August 24, 2000 psychiatric evaluation which noted anhedonia and, Plaintiff believes, assigned a Global Assessment of Functioning ("GAF") of 40.  (Pl.'s Br. at 5-6.)  First, the Court notes that the evaluation notes provided by Dr. Rebal are mostly illegible and it is impossible to conclusively determine from reading them what GAF was assigned, if any.  (Tr. at 344-46.)  In making his finding as to Plaintiff's mental impairment, the ALJ relied instead upon the consultative examination performed less than two months later on October 16, 2000.  (Tr. at 31.)  Therein, Dr. Holm diagnosed "adjustment disorder with depressed mood secondary to persistent back pain," and assigned a GAF of 60.  (Tr. at 342-43.)  Because Dr. Rebal's evaluation was frequently illegible and because no other evidence in the record supports Plaintiff's interpretation of Dr. Rebal's conclusion as to Plaintiff's GAF at that time, Plaintiff has not shown that he was prejudiced by the failure to mention the report.

For the foregoing reasons, the Court concludes that the ALJ did not draw inappropriate conclusions from the evidence or err in failing to include certain evidence in his findings.

**Q.      Issue 15: Residual Functional Capacity**

Plaintiff claims that the "ALJ erred in failing to explain how he arrived at the residual functional capacity he created." (Pl's Br. at 17.) Although Plaintiff's brief refers the Court to his discussion of Issue 1 for elaboration on this point of error, the only reference to this issue there is the following:

> The ALJ makes the following statement regarding Plaintiff's residual functional capacity. "The undersigned has carefully considered the entire record of medical evidence in the context of Mr. Vanzanten's subjective allegations and finds tha the retained the ability to perform a modified range of light work during the period at issue (with nonexertional limitations enumerated below)." Unfortunately, the ALJ's failure to adequately explain how he arrived at this conclusion, and particularly his omission of important portions of the evidence as noted above, renders it unsatisfactory, and should in itself require at least a remand.

(Pl.'s Br. at 4-5.)

In his decision, after discussing the first, second, and third steps of the sequential evaluation process, the ALJ states "[t]he undersigned must next determine Mr. Vanzanten's residual functional capacity. . . ." (Tr. at 29.) Eight paragraphs follow, in which the ALJ discusses Plaintiff's testimony related to his back pain and physical capabilities and evidence from the record related to Plaintiff's treatment for back pain. (Tr. at 29-30.) Then, the ALJ states his conclusion that Plaintiff retained the residual functional capacity for light work with certain limitations. (Tr. at 30.) It is clear that the discussion following the ALJ's statement that he must determine Plaintiff's RFC formed the basis for his determination of Plaintiff's RFC.

Thus, the Court finds that the ALJ did not, as Plaintiff alleges, fail to explain how he arrived at the RFC he determined, and thus did not err.

34

**R.      Issue 16: Applicability of the Listings**

Plaintiff asserts that the "ALJ erred in failing to adequately consider the applicability of the listings in this case." (Pl.'s Br. at 17.) More specifically, Plaintiff argues that the ALJ should have considered the applicability of listings of § 12.04, relating to affective disorders, and § 1.04, relating to disorders of the spine. *Id.*

The listings to which Plaintiff refers are set out at 20 C.F.R., Part 404, Subpart P, Appendix 1 ("Listings"), and are considered at the third step of the sequential evaluation process. The Listings "are descriptions of various physical and mental illnesses. . . most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id*. at 530. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Id*. (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. (citing SSR 83-19). The criteria in the Listings are designed to be demanding and stringent. *Falco*, 27 F.3d at 162. This is because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan*, 493 U.S. at 532.

The claimant bears the burden of proving that his impairments meet or equal impairments found within the Listings. *Henson v. Barnhart*, 373 F. Supp. 2d. 674, 685 (E.D. Tex. 2005) (citing *McCuller v. Barnhart*, 72 Fed. Appx. 155, 158 (5th Cir. 2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 404.1526(a)). If a claimant fails to meet this burden, the court must find that substantial evidence supports the ALJ's finding. *Henson*, 2005 WL 1391161, at *7 (citing *Selders*, 914 F.2d at 620.

First, the Court addresses Plaintiff's contention that the ALJ did not adequately consider the

35

Listings in this case.  In his decision, the ALJ determined that Plaintiff has no impairment that meets

the criteria of *any* impairment in the Listings.  (Tr. at 29.)  This statement implies that the ALJ

considered the particular Listings to which Plaintiff points, even if the ALJ did not specifically

reference them.  In addition, in reaching his determination, the ALJ stated that he reviewed all the

evidence, including the records submitted by Plaintiff's treating and examining physicians, and noted

that none of those physicians mentioned findings equivalent to the criteria of any listed impairment.

(Tr. at 29.)  The ALJ also wrote that he considered the opinions of medical consultants who evaluated

the issue at the initial and reconsideration levels of the administrative review process, and determined

that Plaintiff's impairments did not meet the criteria in the Listings.  *Id*.  Given the ALJ's discussion

of his analysis at step three of the sequential process, the Court finds that the ALJ did not fail to

adequately consider the applicability of the Listings in this case.

Next, the Court considers Plaintiff's assertion that the evidence supports a finding that he

meets the requirements of Listings 1.04 and 12.04.  Listing 1.04 covers disorders of the spine, and

includes spinal stenosis and degenerative disc disease.  To meet the listing, a claimant must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution
> of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or . . ..

> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings
> on appropriate medically acceptable imaging, manifested by chronic nonradicular
> pain and weakness, and resulting in inability to ambulate effectively.[6]

Although Plaintiff alleges that he met this Listing, other than including the listing number in the first

sentence of this section of his brief, he did not brief this point.  (Pl.'s Br. at 17.)  Moreover, the record

---

[6]1.04(B) addresses spinal arachnoiditis.  Plaintiff has not alleged, nor does a review of the record indicate,
that Plaintiff suffers from this condition.

contains evidence supporting a finding that Plaintiff does not meet Listing 1.04. For example, Dr. Buley's physical examination revealed no muscle atrophy and essentially negative straight leg raises, two of the symptoms under 1.04(A). (Tr. at 481.) Thus, Plaintiff cannot establish that he meets the criteria for 1.04(A). Dr. Buley also observed that Plaintiff "ambulates with a normal gait pattern[.]" (Tr. at 481.) The inability to ambulate effectively is one criteria a claimant must establish under Listing 1.04(C). Because Plaintiff could ambulate effectively, he cannot establish that he met the criteria for Listing 1.04(C). Thus, Plaintiff has failed to meet his burden to establish that he met the criteria of Listing 1.04 during the relevant time period.

Plaintiff also argues that he met the requirements of Listing 12.04, which addresses affective disorders. (Pl.'s Br. at 17-18.) Plaintiff claims that Dr. Meshack's diagnosis of "major depressive disorder, moderate, recurrent as evidenced by sleep and appetite disturbance, decreased memory and concentration, anhedonia, decreased energy" coupled with a GAF rating of 30 suffices to meet the criteria of Listing 12.04. (Pl.'s Br. at 18; Tr. at 453.)

Listing 12.04 sets forth the criteria necessary for a presumptive finding of disability due to affective disorders:

> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
>   1. Depressive syndrome characterized by at least four of the following:
>       a. Anhedonia or pervasive loss of interest in almost all activities; or
>       b. Appetite disturbance with change in weight; or
>       c. Sleep disturbance; or
>       d. Psychomotor agitation or retardation; or
>       e. Decreased energy; or
>       f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.

Plaintiff does not explain how the evidence to which he points satisfies these criteria. To meet the requirements of 12.04, a claimant must show symptoms which have been medically documented as persistent, either continuous or intermittent, or chronic effective disorder of two years' duration.

38

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04 (A) and (C).  Plaintiff points to the results of one examination, which is clearly insufficient to show persistence.

In sum, the Court finds that the ALJ gave adequate consideration to the applicability of the Listings in this case.  In addition, Plaintiff has failed to satisfy his burden to demonstrate that his impairments meet the criteria of Listings 1.04 or 12.04.  Accordingly, reversal on these grounds is not appropriate.

**S.      *Issue 17: Period of Disability***

Plaintiff asserts that the ALJ erred in evaluating his claim as requesting a closed period of disability.  (Pl.'s Br. at 18.)  At the hearing, Plaintiff's counsel was asked by the ALJ if Plaintiff was requesting a closed period of disability.  (Tr. at 570.)  Counsel informed the ALJ that Plaintiff was appealing a previous denial and that, should he succeed in that appeal, Plaintiff would want the ALJ to look back to the original alleged onset date in the prior claim.  (Tr. at 571.)  However, were the earlier decision to be upheld, Plaintiff's counsel and the ALJ agreed that the onset date would be April 28, 2000.  (Tr. at 572.)  As that previous decision was affirmed, the onset date at issue in this case is April 28, 2000.  *See Van Zanten v. Commissioner*, 3:02-CV-2649-P(N.D. Tex.) (findings and recommendation issued July 25, 2005, order adopting findings and recommendation issued March 28, 2006).

Plaintiff returned to work in September 2001, and Plaintiff's counsel stated "[w]e're not, we do not, we're not claiming he's disabled since September of 2001.  We would like a trial work period if it's available."  (Tr. at 572.)  A trial work period allows a disabled individual to test his or her ability to work while still considered disabled.  20 C.F.R. § 404.1592(a).  An individual may remain disabled while continuing to work for as long as nine months.  20 C.F.R. § 404.1592(b). It appears that by this point of error, Plaintiff is asserting that the end date of the closed period should not have

been September 2001, but should have been left open in case Plaintiff was not successful in his return to work.  However, Plaintiff can show no prejudice caused by the assumption that he was claiming a closed period of disability.  As the ALJ did not find Plaintiff to be disabled, any additional time added to the period is irrelevant.

Because Plaintiff was not prejudiced by the ALJ's evaluation of his claim as one for a closed period of disability, remand on this issue is not appropriate.

**T.**    ***Issue 18: Legal Standard for Determining Severity***

Plaintiff contends that the case must be remanded because the ALJ did not apply the correct standard for determining a disability, as set forth in *Stone v. Heckler*, and instead imposed a higher standard.  (Pl.'s Br. at 19.)

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The Fifth Circuit has held that a literal application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than are indicated by the statute.  *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985).  Accordingly, in the Fifth Circuit an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."  *Id.* at 1101.  To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used."  *Id.* at

1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id.* at 1104.

The Fifth Circuit appeared to leave the lower courts no discretion to determine whether such an error was harmless by mandating that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). However, the Fifth Circuit's "subsequent rulings have narrowed the holding to require remand only when the ALJ failed to cite the *Stone* standard and the case was adjudicated at the second step of the sequential evaluation process." *McClatchy v. Barnhart*, 2004 WL 2810100, at *5 (W.D. Tex. Dec. 3, 2004) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (5th Cir. 1987); *Reyes v. Sullivan*, 915 F.2d 151, 154 (5th Cir. 1990)). In *Chaparro*, the Fifth Circuit found that the claimant had waived his argument that the ALJ applied an incorrect standard in determining severity. 815 F.2d at 1011. The Fifth Circuit noted, however, that because the case turned on the ALJ's inquiry at the fourth step of the sequential evaluation process, the claimant's argument was irrelevant to the case's disposition. *Id.* In *Jones*, the Fifth Circuit refused to find error where the district court used a standard for determining severity similar to that rejected in *Stone*, because the ALJ had proceeded through the fourth and fifth steps of the sequential process. 829 F.2d at 527 n.1. Thus, in a case adjudicated at the fourth or fifth step of the sequential evaluation process, "the ALJ's failure to cite the *Stone* standard does not, without more, necessitate remand." *McClatchy*, 2004 WL 2810100, at *5.

In the instant matter, the ALJ wrote that "[a]n impairment is severe within the meaning of the regulations if it imposes more than slight restrictions in an individual's ability to perform basic work-

related activities, the *de minimus* standard set by <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985)."

(Tr. at 29.) Using this standard, the ALJ found that Plaintiff had "post-traumatic lumbar disc disease

and adjustment disorder with depressed mood, secondary to back pain, impairments that impose more

than slight limitations and are therefore severe." *Id*. The ALJ did refer to *Stone* and, although he did

not quote the *Stone* standard, it does not appear that the ALJ applied a different standard in making

his decision.   To the extent that the ALJ did apply an erroneous standard however, the ALJ

nevertheless found that Plaintiff's impairments were severe.   In addition, the ALJ adjudicated

Plaintiff's claim at the fifth step of the sequential evaluation process.   Plaintiff must therefore

establish that any error on the part of the ALJ constitutes prejudicial error, meriting remand. *See*

*Altvater v. Barnhart,* 2005 WL 475149, at *6 (W.D. Tex. Feb. 10, 2005); *McClatchy*, 2004 WL

2810100, at *5.  Plaintiff does not argue that he was prejudiced in any way, nor does he appear to

have been prejudiced, as the ALJ found that Plaintiff's impairments were severe, and proceeded

through steps three, four, and five of the sequential process.   Accordingly, the Court finds that any

error on the ALJ's part in failing to use the correct standard for determining severity does not merit

remand.

U.      ***Issue 19: Inaudible Audiotapes***

        Lastly, Plaintiff complains that a portion of the audiotape of the hearing which was provided

by the Appeals Council to assist Plaintiff in his appeal at that level was inaudible.  (Pl.'s Br. at 19.)

Although Plaintiff states that "a portion of the tape at the beginning of the hearing was apparently not

duplicated," he does not indicate how much of the tape was missing, what evidence was missing, or

how that evidence would have assisted him in his appeal.   Nor does Plaintiff show that he requested

a complete tape from the Appeals Council when he noticed the omission.  Lastly, Plaintiff does not

allege that he was in any way prejudiced by this.

Accordingly, the Court finds that reversal on this issue is not warranted.

### III.   RECOMMENDATION

Based on the foregoing reasons, this Court recommends that Plaintiff's *Motion for Summary Judgment* be **DENIED**, and that Defendant's *Motion for Summary Judgment* be **GRANTED.**

**SO RECOMMENDED**, on this the 12th day of February, 2007.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc*).*


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE